UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
TRACEY MATTHEW,

                        Plaintiff,

               - against -

JPMORGAN CHASE BANK, N.A.; JOHN WOLF;
and ANNA KANG,

                      Defendants.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**

17-CV-3594 (RRM) (ARL)

ROSLYNN R. MAUSKOPF, Chief United States District Judge.

      Plaintiff Tracey Matthew brings this *pro se* action against her former employer,

JPMorgan Chase Bank, N.A. (the "Bank"), and two of its employees, alleging employment

discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the

Americans with Disabilities Act of 1990 (the "ADA"); a violation of the Fair Labor Standards

Act ("FLSA"); and retaliation under these three statutes.  The Bank now moves to dismiss this

action or, in the alternative, for summary judgment.  For the reasons set forth below, the Bank's

motion to dismiss is granted and denied in part, and Matthew is granted leave to file a second

amended complaint.

## BACKGROUND

      The following facts are drawn from Matthew's amended complaint and are assumed to be

true for purposes of this motion.  Matthew is a Trinidadian woman of West Indian descent.  Prior

to her termination on July 11, 2013, she was the branch manager of one of the Bank's Brooklyn

branches.  For the six months prior to her termination, that branch did not have an assistant

manager because the woman who occupied the position went on maternity leave and never

returned.  As a result, there was no one to relieve Matthew for breaks during the day or for time off.

On July 2, 2013, Matthew felt ill after work due to hypertension.  She consulted her physician, who prescribed bedrest.  Although Matthew's request for a week off was granted, her district manager, defendant John Wolf, requested permission to terminate her during her absence. When Matthew returned to work on July 11, 2013, Wolf informed her that she was terminated.

On or about September 11, 2013, Matthew filed a charge of discrimination with the New York State Division of Human Rights.  Although Matthew's amended complaint alleges that the Equal Employment Opportunity Commission issued a right-to-sue letter on October 3, 2013, the right-to-sue letter attached to her original complaint is dated March 16, 2017.

Procedural History

On June 14, 2017, Matthew commenced this action by filing a completed form complaint of the sort typically used by *pro se* plaintiffs to file employment discrimination actions.  Her original complaint named three defendants: the Bank, Wolf, and one Anna Kang, who is listed in the caption but not otherwise mentioned in the pleading.  Matthew checked boxes on the form to indicate that she was raising Title VII claims for race, gender, and national origin discrimination; ADA claims, including a claim for failure to accommodate Matthew's hypertension; and an FLSA claim arising from the Bank's failure to give her adequate breaks and time off.  Matthew also checked a box labelled "Retaliation," but did not specify the bases for her retaliation claims. However, the pleading contained virtually no factual allegations to support any of Matthew's claims.

In a memorandum and order dated April 4, 2019, (the "Prior Order"), the Court dismissed Matthew's complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B).  The

2

Prior Order explained what was necessary to state a claim under Title VII, the ADA, and the

FLSA, and held that Matthews had not alleged sufficient facts.  In the light of Matthew's *pro se*

status, the court granted her 30 days' leave to file an amended complaint.

On or about April 30, 2019, Matthew filed her amended complaint.  That pleading

attaches a two-page typewritten description of the facts underlying Matthew's claims.  (Am.

Compl. (Doc. No. 5) at 9–10.) [1]  With respect to the Title VII claims, the attachment explains

that Matthew's belief that she was treated differently because of her race, gender, and national

origin stems solely from the way in which Wolf spoke to her, constantly complaining that he

"couldn't understand anything [she] was saying because of [her] accent."  (*Id.* at 9.)  The

amended complaint does not specifically allege that she was terminated on account of any

protected characteristics, but claims that her termination was "retaliation" for her calling in sick.

(*Id.*)

Matthew's amended complaint contains virtually no allegations to support her ADA

discrimination or FLSA claims.  Although it alleges that Matthew was disabled by virtue of her

hypertension, it does not allege that this condition significantly limited any major life activities.

Furthermore, while the pleading alleges that Matthew was denied breaks and time off because of

the absence of an assistant manager, it does not allege facts to suggest that she was a nonexempt

employee and was not compensated for the overtime hours.

The Instant Motion

The Bank now moves to dismiss Matthew's amended complaint or, in the alternative, for

summary judgment.  First, the Bank argues that the amended complaint fails to state a claim

under the FLSA and that Matthew's FLSA claims are barred by the statute of limitations.

---

[1] In citing to documents filed on ECF, the Court will refer to the page numbers assigned by ECF.

Second, the Bank asserts that the amended complaint fails to plead facts in support of her Title VII discrimination and retaliation claims.  Specifically, the Bank notes that Matthew alleges no facts whatsoever to support her gender and race discrimination claims, and does not allege circumstances suggesting that she experienced any adverse employment action under circumstances that give rise to an inference of national origin discrimination.  Third, the Bank argues that Matthew fails to state an ADA claim because she does not plead facts to demonstrate that her hypertension "substantially limits" a major life activity.  The Bank argues that Matthew has not alleged that she was qualified to perform her job with or without a reasonable accommodation, and that Matthew does not allege that she was ever denied a reasonable accommodation.  Finally, the Bank argues that it is entitled to summary judgment because it has presented evidence that there were legitimate business reasons for terminating Matthew and Matthew cannot prove that these reasons were pretexts for discrimination.

In opposition to the Bank's motion, Matthew submitted a 12-page affidavit, (the "Opposition Affidavit"), which details her history with the Bank and its predecessors.  Matthew states that she was a sales manager with Washington Mutual when that company was acquired by the Bank in the fall of 2008.  She was immediately invited to participate in a highly selective sales manager training program.  She excelled in the program and, in September 2011, was invited to participate in a six-month executive training program.  On or about April 1, 2012, she was appointed a branch manager and began reporting to District Manager Wolf.

In January 2013, the assistant branch manager took maternity leave, rendering Matthew's branch understaffed.  As a result, Matthew frequently worked 10-to-12-hour days, six days a week without lunch breaks.  During that same month, Matthew was diagnosed with severe hypertension, which caused her to experience severe migraines, chronic neck pain, fatigue, and

4

ocular pain. She repeatedly requested additional staffing, explaining to Wolf that the understaffing was adversely affecting her health. Wolf ignored her requests, although he allegedly provided increased staffing and administrative support to other non-disabled branch managers.

In March 2013, after her symptoms worsened, Matthew notified Wolf of her diagnosis. Although her physician recommended that she limit her activities and request leave, Matthew requested no more than three days' sick leave. Although Wolf did not deny her requests, Matthew claims that it was "all too apparent" that he resented her requests. (Opp. Aff. (Doc. No. 25) ¶ 17.)

On July 2, 2013, Matthew's hypertension was so severe that her doctor prescribed a week of bedrest. Wolf approved her request for a weeklong leave, but was "audibly agitated" by the request. During the week that she was absent, he requested permission to fire her. On July 11, 2013 – less than 24 hours after she returned to work – he terminated her, ostensibly for "performance reasons." (*Id.* ¶ 21.)

Matthew alleges that in addition to discriminating against her due to her disability, Wolf subjected her to a hostile work environment due to her national origin. According to Matthew, Wolf complained that he could not understand her during "nearly every single conversation" he had with her, expressing "clear anger and annoyance" about her Trinidadian accent. (*Id.* ¶ 28.) Matthew does not allege that Wolf made any comments regarding her race or gender, and does not respond to the Bank's arguments regarding her FLSA claim.

## STANDARD OF REVIEW

The Bank's motion is principally brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which permits a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." To withstand a motion to dismiss, a complaint

"must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).

In evaluating a Rule 12(b)(6) motion, the Court assumes the truth of the facts alleged, and draws all reasonable inferences in the nonmovant's favor.  *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).  Although all factual allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  A complaint need not contain "detailed factual allegations," but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Rather, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 570).

A *pro se* plaintiff's pleadings are held "to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)); *see Harris*, 572 F.3d at 72 (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").  Notwithstanding the liberal pleading standards granted to a *pro se* plaintiff, the Court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist."  *Molina v. New York*, 956 F. Supp. 257, 260 (E.D.N.Y. 1995).  Where a *pro se* plaintiff has altogether failed

6

to satisfy a pleading requirement and the allegations in the complaint do not raise a plausible

claim to relief, dismissal is warranted.  *See Twombly*, 550 U.S. at 558; *see also Rodriguez v.*

*Weprin*, 116 F.3d 62, 65 (2d Cir. 1997) (citation omitted).

## DISCUSSION

I.    The FLSA Claim

Matthew's amended complaint does not state a claim under the FLSA.  "The FLSA

generally requires employers to pay 'employees a specified minimum wage, and overtime of

time and one-half for hours worked in excess of forty hours per week.'"  *Fernandez v. Zoni*

*Language Centers, Inc.*, 858 F.3d 45, 48 (2d Cir. 2017) (quoting *Glatt v. Fox Searchlight*

*Pictures, Inc.*, 811 F.3d 528, 533 (2d Cir. 2015)).  To state an overtime claim under the FLSA, a

plaintiff must allege that (1) she was an employee eligible for overtime pay; and (2) that she

actually worked overtime without proper compensation.  *See DeSilva v. North Shore–Long*

*Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 507 (E.D.N.Y. 2011).  "To plead a

plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and

frequency of their unpaid work to support a reasonable inference that they worked more than

forty hours in a given week."  *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723

F.3d 192, 201 (2d Cir. 2013) (affirming dismissal of claims for unpaid overtime where plaintiffs

merely alleged that they were not paid for overtime hours worked and failed to specify schedules

and hours).

In the Prior Order, the Court dismissed Matthew's FLSA claim on the ground that she

had not alleged that she worked more than 40 hours in a week or that her working hours and

compensation violated the FLSA.  (Prior Order at 5.)  Matthew did not cure those deficiencies in

the amended complaint.  Although Matthew has attached to her amended complaint "work

7

schedules that document[ ] the times [she] was scheduled to work" more than 40 hours during four weeks in June 2013, (Am. Compl. at 9, 19–26), Matthew does not allege that she actually worked the scheduled hours or that she was not adequately compensated for the overtime hours.

In her Opposition Affidavit, Matthew does allege that she frequently worked 10-to-12-hour days, six days a week, (Opp. Aff. (Doc. No. 25) ¶ 9), but does not allege that she was not paid overtime wages.  Even if she could do so, it would be futile to grant Matthew leave to replead so that she could incorporate these allegations into a second amended complaint.  As the Bank correctly notes, Matthew's FLSA claims are time-barred. "The FLSA provides a two-year statute of limitations on actions to enforce its provisions unless the violation was willful, in which case the limitations period is three years." *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 461 (E.D.N.Y. 2014) (citing 29 U.S.C. § 255(a)); *Wang v. Palmisano*, 51 F. Supp. 3d 521, 535 (S.D.N.Y. 2014) (applying these same limitation periods to FLSA retaliation claims).  Since Matthew was terminated in mid-July 2013, even the three-year limitation period had expired by the time she commenced this action in mid-June 2017.  Accordingly, Matthew's FLSA and FLSA retaliation claims are dismissed.

II.     Title VII Discrimination

"It is axiomatic that mistreatment at work ... is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)). Accordingly, "to state a claim for discriminatory action in violation of Title VII," a plaintiff must plead "facts that would create an inference that any [adverse] action taken by ... [any] defendant was based upon her gender," or another protected characteristic.  *Id.*

As the Bank correctly notes, Matthew has not alleged any facts supporting an inference that she was terminated because of her race or gender.  Indeed, the only allegation in the amended complaint which might even arguably support the inference that Matthew was terminated because of a protected characteristic is the allegation that Wolf "complained that he couldn't understand anything [Matthew] was saying because of [her] accent."  (Am. Compl. at 9.)  According to her Opposition Affidavit, Wolf registered this complaint during "nearly every single conversation" he had with her, and expressed "clear anger and annoyance" about her Trinidadian accent. (Opp. Aff. ¶ 24.)

Even if the Court were to grant Matthew leave to amend her pleading to incorporate the allegations contained in the Opposition Affidavit, these allegations would not be sufficient to establish a prima facie case of national original discrimination.  "[T]he Second Circuit has not yet squarely held that hostility based on an individual's accent is evidence of national origin discrimination."  *Edwards v. New Opportunities, Inc.*, No. 3:05-CV-1238 (JCH), 2008 WL 11489009, at *8 (D. Conn. July 1, 2008).  Several district courts in the Circuit have held that evidence of frequent accent mimicking or mockery can support a claim of national origin discrimination.  *See id.* (pervasive accent mockery by co-workers or supervisors constitutes a hostile work environment); *see also Rosas v. Balter Sales Co. Inc.*, No. 12-CV-6557 (VSB), 2018 WL 3199253, at *6 (S.D.N.Y. June 29, 2018) (frequent mimicking of an accent and repeated use of derogatory words and phrases sufficient to support a hostile work environment claim).  However, in an unpublished opinion, the Second Circuit has implied that evidence that a plaintiff's "coworkers and supervisors asked him to repeat himself because they could not understand him" is insufficient to establish national origin discrimination.  *Ghose v. Century 21, Inc.*, 12 Fed. Appx. 52, 54 (2d Cir. 2001).

The allegations in the amended complaint and the Opposition Affidavit, taken together, establish only that Wolf frequently complained that he was unable to understand Matthew's accent. While Matthew alleges that he expressed anger and annoyance, she does not allege that he mimicked or mocked her or that he used derogatory words or phrases during these conversations. Matthew's allegations alone are insufficient to support the inference that Wolf harbored any animus on account of Matthew's national origin, much less that he decided to terminate Matthew because of her national origin. Accordingly, Matthew has failed to state a claim for employment discrimination under Title VII.

III.     Retaliation

Preliminarily, the Court notes that it is unclear what type of retaliation Matthew is alleging. Title VII, the FLSA, and the ADA all have specific anti-retaliation provisions, and Matthew – who alleges retaliation by checking a box on the form complaint – does not specify the type of retaliation she is alleging. Although the Court has already held that Matthew's FLSA retaliation claim is time-barred, the Court will analyze the amended complaint to determine if it states a retaliation claim under Title VII, FLSA, or the ADA.

To make out a prima facie case of Title VII retaliation, "a plaintiff must demonstrate that '(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)). With respect to the first element:

> the Second Circuit has recognized that "protected activity"
> includes "informal protests of discriminatory employment
> practices, including making complaints to management." *Sumner*
> *v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990). However,

10

> such informal complaints must be sufficiently specific to make it
> clear that the employee is complaining about conduct prohibited by
> Title VII.  Generalized complaints about a supervisor's treatment
> are insufficient.  *Rojas v. Roman Catholic Diocese of Rochester*,
> 660 F.3d 98, 108 (2d Cir. 2011).

*Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012).

Similarly, "a plaintiff alleging retaliation under FLSA must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)).  Oral complaints can constitute protected activity, *see Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 4 (2011), provided the complaints are "made to employers in a context that makes the assertion of rights plain." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 115 (2d Cir. 2015).  However, whether oral or written, "[t]o fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* (quoting *Kasten*, 563 U.S. at 14).

The amended complaint does not allege that Matthew engaged in protected activity for purposes of either Title VII or the FLSA.  According to the pleading, she did not file a charge of discrimination until September 11, 2013 – three months after she was terminated.  There is no indication that she ever made any oral complaints regarding race, gender, or national origin discrimination, or a complaint about not receiving overtime pay.  Accordingly, the allegations in the amended complaint do not make out or even suggest a claim of Title VII or FLSA retaliation.

11

In contrast, the amended complaint may state a claim for retaliation under the ADA.  In order to establish a prima facie case of retaliation, a plaintiff "must show that: (1) [s]he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity."  *Morey v. Windsong Radiology Grp., P.C.*, 794 F. App'x 30, 2019 WL 6769673 at *2 (2d Cir. Dec. 12, 2019) (summary order) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)) (alterations in *Morey*). With respect to the first element, "[r]equesting a reasonable accommodation is a protected activity under the ADA."  *Id.* (citing *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002)).  With respect to the fourth element, "close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation."  *Id.* at 720.

Matthew's amended complaint alleges that she was terminated a few days after she requested sick leave.  Assuming that the leave request can be characterized as a request for a reasonable accommodation, there was a close temporal proximity between the "protected activity" – the request for leave – and the adverse employment action – Matthew's termination. Accordingly, while the amended complaint does not suggest claims for Title VII and FLSA retaliation, the facts alleged in the pleading appear to state a claim for ADA retaliation.

IV.  The ADA Claims

Matthew's amended complaint alleges two distinct ADA claims: 1) that the Bank terminated her due to her disability and 2) that the Bank failed to accommodate her disability. Although the amended complaint fails to allege facts to state either claim, allegations in the

Opposition Affidavit suggest that Matthew might be able to amend her pleading to do so.

Accordingly, the ADA claims are dismissed with leave to amend.

A.  <u>Discriminatory Discharge</u>

"In order to establish a prima facie case of discriminatory discharge, a plaintiff must show that: (1) her employer is subject to the ADA; (2) she suffers from a disability within the meaning of the ADA; (3) she could perform the essential functions of her job with or without reasonable accommodation; and (4) she was fired because of her disability." *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869–70 (2d Cir. 1998); *see also Thompson v. New York City Dep't of Prob.*, 348 F. App'x 643, 645 (2d Cir. 2009).  To satisfy the third element, a plaintiff need only make a minimal showing that he "possesses the basic skills necessary for performance of [the] job." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001), *as amended* (June 6, 2001) (quoting *Owens v. New York City Housing Auth.*, 934 F.2d 405, 409 (2d Cir. 1991)).  The facts that a plaintiff was hired and performed the job in the past may alone be sufficient to make this minimal showing.  *See Slattery*, 248 F.3d at 92 ("[W]here discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw.")  This element does not require a showing the plaintiff was performing the duties to the satisfaction of the employer.  *Id.*  The Second Circuit has cautioned:  "The qualification prong must not … be interpreted in such a way as to shift onto the plaintiff an obligation to anticipate and disprove, in his prima facie case, the employer's proffer of a legitimate, non-discriminatory basis for its decision." *Id.*

With respect to the fourth element, "disability" means: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment …." 42 U.S.C. § 12102(1).  As used in this definition, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking,

14

standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions."  42 U.S.C. § 12102(2)(B).

To plausibly state a claim discriminatory discharge claim under the theory that the plaintiff is actually disabled, a plaintiff "must allege … facts as to how her disability 'substantially limits' her 'major life activities.'"  *Morey*, 2019 WL 6769673, at *2.  However, a plaintiff need not allege these facts to plead a claim that she was fired because she was "regarded as disabled."  "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). While the "regarded as disabled" theory does not apply to impairments that are minor or "transitory" – a term which refers to impairments "with an actual or expected duration of 6 months or less," 42 U.S.C. § 12102(3)(B) – the regulations classify the "transitory and minor" exception as a defense. *Sherman v. Cty. of Suffolk*, 71 F. Supp. 3d 332, 345 (E.D.N.Y. 2014) (citing 29 C.F.R. § 1630.15(f)).  Accordingly, a plaintiff does not have to allege that the perceived disability is not transitory and minor; "rather, the covered entity must demonstrate that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) both transitory and minor."  29 C.F.R. § 1630.15(f).

As the Bank correctly notes, Matthew's amended complaint fails to state a claim for discriminatory discharge based on disability.  First, the amended complaint does not specifically

allege facts to show that Matthew was qualified for the position.  Second, the pleading does not

allege facts suggesting that Matthew was actually disabled.  It alleges that her hypertension

rendered her unable to work for a "few days" in early July 2013, but does not allege facts

suggesting that this condition "substantially limits" a "major life activity."

The facts alleged in the Opposition Affidavit, however, suggest that Matthew could

allege a claim that she was terminated on account of her disability.  First, the Opposition

Affidavit specifically alleges that the Bank hired her as a branch manager in April 2013 and that

she had been performing the job for over 15 months prior to her termination.  These facts, if

alleged in a pleading, would be sufficient to meet the minimal showing required by the

qualification prong.  *See Slattery*, 248 F.3d at 92.  That showing is not undercut by proof that

Matthew may not have been performing the work to the Bank's satisfaction.  *Id.*  Second,

Matthew's inability to allege or establish actual disability would not preclude her from relying on

a "regarded as disabled" theory.  However, it is unclear from Matthew's amended complaint

whether she intends to allege Wolf terminated her because he regarded her as disabled.  The

amended pleading states only that Wolf requested permission to terminate her on July 5, 2013,

during the week that she was out sick.  It does not allege what motivated him to do so.

B.  Failure to Accommodate

The ADA provides that "[n]o covered entity shall discriminate against a qualified

individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms,

conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The term "discriminate

against a qualified individual" is statutorily defined to include "not making reasonable

accommodations to the known physical or mental limitations of an otherwise qualified individual

with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).  To state a claim under the ADA for failure to provide a reasonable accommodation, a plaintiff must "allege facts to support her prima facie case that '(1) [she] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, [she] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'"  *Morey*, 2019 WL 6769673 at *2 (quoting *McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013)).

Matthew's amended complaint fails to allege facts to state a failure to accommodate claim.  As discussed above, the pleading does not allege facts to suggest that Matthew is disabled for purposes of the ADA.  The pleading also does not allege that Matthew was ever refused an accommodation.  However, the Opposition Affidavit indicates that Matthew requested "increased staffing as a means to accommodate [her] disability" and that Wolf "repeatedly ignored" her requests.  (Opp. Aff. ¶ 11–12.)  These allegations suggest that Matthew might be able to state a claim for failure to accommodate her disability.

C.  Leave to Amend

A court should not dismiss a *pro se* action "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citing *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).  Here, a liberal reading of Matthew's allegations, as clarified by the Opposition Affidavit, suggests she may be able to allege an ADA claim for discriminatory discharge based on a "regarded as disabled" theory and/or a failure to grant her request for

17

additional staffing as a reasonable accommodation.  Accordingly, the Court grants Matthew 30 days' leave in which to file a second amended complaint.

The Court will not consider that portion of the Bank's motion which seeks summary judgment at this juncture.  However, in deciding whether to amend her pleading, Matthew should consider whether she will be able to meet her burden of proving that the Bank's non-discriminatory reasons for terminating her were pretexts for disability discrimination.  If Matthew elects to file an amended complaint, the Bank may seek permission to move for summary judgment in accordance with the Court's Individual Rules.

## CONCLUSION

For the reasons set forth above, the Bank's motion to dismiss Matthew's FLSA claim, her Title VII discrimination claim, her FLSA claim, and her claims for Title VII and FLSA retaliation is granted and these claims are dismissed with prejudice.  The motion to dismiss Matthew's ADA retaliation claim is denied.  Matthew is granted leave to file a second amended complaint, which may allege discriminatory discharge, failure to accommodate, and retaliation claims under the ADA.  It shall not allege any of the claims dismissed by the Memorandum and Order or name John Wolf or Anna Kang as defendants, since ADA discrimination and retaliation claims cannot be brought against individuals.  *See, e.g.*, *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (retaliation provision of the ADA does not provide for individual liability); *Viruet v. City of New York*, No. 16-CV-8327 (JGK), 2019 WL 1979325, at *13 (S.D.N.Y. May 3, 2019) (discrimination claims cannot be brought against individuals under the ADA).

Matthew shall have 30 days from the date of this Memorandum and Order in which to file her amended pleading.  That pleading shall be entitled "Second Amended Complaint" and bear the same docket number as this Memorandum and Order.  Matthew is advised that the

Second Amended Complaint, if filed, will completely replace the amended complaint, so all relevant facts must be repeated in the new pleading.  If Matthew fails to amend her complaint within the time allotted, judgment may enter against her.  The Clerk of Court is directed to mail Matthew a copy of this Memorandum and Order and to note the mailing on the docket.

SO ORDERED.

Dated: Brooklyn, New York
     May 18, 2020

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge